UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES RABON,

        Petitioner,                                Hon. Wendell A. Miles

v.                                                  Case No. 1:04-CV-477

KURT JONES,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Rabon's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Rabon's petition be **denied**.

**BACKGROUND**

        On May 27, 2000, 80 year-old Jung Sho (a.k.a. Mack) was brutally beaten to death. (Trial Transcript, March 5, 2001, 31-36). Plaintiff (a.k.a. Baby Boy) and Paris Germany were charged with second degree murder regarding Jung Sho's killing. *Id.* at 4-5, 34. Plaintiff was also charged with possession of a firearm during the commission of a felony. *Id.* at 5. Paris Germany subsequently pleaded guilty to second degree murder. *Id.* at 34. Plaintiff waived his right to a trial by jury and opted instead for a bench trial. (Hearing Transcript, December 7, 2000, 4-6).

Following the presentation of evidence, Plaintiff was acquitted on the charge of possessing a firearm during the commission of a felony, but was found guilty of second degree murder as an aider and abetter. (Trial Transcript, March 15, 2001, 25-28). Petitioner was sentenced to 180-375 months in prison. (Sentencing Transcript, April 25, 2001, 38-39). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I. The prosecutor failed to present sufficient evidence to support the verdict, thereby denying Mr. Rabon of his State and Federal constitutional rights to remain free from conviction in the absence of proof beyond a reasonable doubt.
>
> II. Defendant is entitled to a remand where the trial judge failed to make sufficient findings of fact with respect to Defendant's intent.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Rabon*, No. 236009, Opinion (Mich. Ct. App., June 17, 2003). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Rabon*, No. 124425, Order (Mich., Dec. 30, 2003). On July 20, 2004, Petitioner submitted a petition for writ of habeas corpus in which he asserts the two claims identified above.

## STANDARD OF REVIEW

Rabon's petition, filed July 20, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application"

examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.        Sufficiency of the Evidence Claim**

Petitioner asserts that he is entitled to habeas relief because there did not exist sufficient evidence to support his conviction. While Petitioner acknowledges his participation in the beating that caused Jung Sho's death, Petitioner nonetheless argues that his conviction must be overturned because the criminal intent he displayed "at most was the intent to commit a battery." Petitioner asserts that "[t]here is no evidence that [he] intended great bodily harm, or that he intended to create a high risk of death or great bodily harm, knowing that death or harm would result."

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002) (citing *Jackson*, 443 U.S. at 324).

Under Michigan law in effect as of the date Petitioner committed the acts for which he was convicted, the elements of second degree murder were: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See People v. Bailey*, 549 N.W.2d 325, 331 (Mich. 1996). Malice is defined as "the intent to kill, an intent to inflict great bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm." *People v. Hopson*, 444 N.W.2d 167, 169 (Mich. Ct. App. 1989). Malice may be inferred "from the facts and circumstances of the killing," *People v. Kemp*, 508 N.W.2d 184, 187 (Mich. Ct. App. 1993), including "evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 299 N.W.2d 304, 327 (Mich. 1980).

To convict an individual as an aider and abetter the following elements must be established: (1) the underlying crime was committed by either the defendant or some other person, (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid or encouragement. *See People v. Bates*, 2000 WL 33421465 at *1 (Mich. Ct. App., April 28, 2000) (citing *People v. Turner*, 540 N.W.2d 728 (Mich. Ct. App. 1995)).

At Petitioner's trial, Keyona Germany testified that she witnessed her brother and Petitioner brutally beat Jung Sho. (Trial Transcript, March 5, 2001, 34-58). Specifically, she testified that Petitioner struck Sho with a "big" stereo speaker, a glass cup, and an iron. *Id.* at 36-37. Keyona Germany further testified that Petitioner "jumped on" Sho's neck and kicked and punched him in the face. *Id.* at 36. Keyona Germany testified that her brother and Petitioner beat Sho "for at least 20 minutes." *Id.* When asked whether Jung Sho did anything to provoke this attack, Keyona Germany

responded, "No. All he did was ask [Petitioner] what are you doing at this house, don't you have a house of your own." *Id.* at 39. In response to this question, Petitioner began beating Sho. *Id.*

Following this incident, Petitioner made a statement to the police which was subsequently introduced into evidence at his trial. Petitioner admitted to the police that he "hit" and "kicked" Jung Sho a "couple of times" and "punched him in his chest, too." *Id.* at 13-14. When asked why he participated in the killing of Jung Sho, Petitioner stated that he was "a little mad" because Sho was allegedly providing Keyona Germany with the money to purchase drugs. *Id.* at 15.

According to the medical examiner, whose report was admitted into evidence, Jung Sho died "of multiple blunt force injuries to the head and chest." *Id.* at 31-32. The medical examiner further observed that Sho suffered multiple facial bruises, intracranial bleeding, multiple rib fractures, bruising of the lungs and diaphragm, laceration of the liver, multiple bruises to the lower extremities, and numerous defensive injuries to his hands. *Id.* at 32-33. The medical examiner concluded that "the manner of death in this case was homicide." *Id.* at 33.

Evidence technician William Niarhos testified that the area in which Jung Sho was attacked was covered with blood. *Id.* at 60-71. Specifically, Niarhos testified that he observed blood on a love seat, on the floor, and on a set of stereo speakers. *Id.* at 61-62. Niarhos further testified that he observed a trail of blood leading away from the crime scene to another residence at which blood was discovered on the porch and front door. *Id.* at 62-63. Niarhos discovered Petitioner at this other residence. *Id.* at 63. Niarhos also observed what appeared to be blood on Petitioner's shoes. *Id.* at 64.

Viewing this evidence in a light most favorable to the prosecution, and according the benefit of all reasonable inferences to the prosecution, a reasonable juror could certainly have found Petitioner guilty beyond a reasonable doubt of second degree murder on an aiding and abetting theory.

As the Michigan Court of Appeals correctly observed, "[t]he evidence that defendant participated in the prolonged and brutal beating of the elderly decedent supported a finding that defendant acted in wanton and willful disregard of the likelihood that the tendency of his behavior was to cause death or great bodily harm." *People v. Rabon*, No. 236009, Opinion at 3 (Mich. Ct. App., June 17, 2003). Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Remand Claim**

Pursuant to Michigan Court Rule 2.517, when an action is tried "on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." Petitioner asserts that the trial judge violated this provision of Michigan law by failing to make sufficient findings regarding whether he possessed "the intent necessary to commit second-degree murder."

First, the federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner's claim rests upon a perceived violation of state law, therefore, relief is available only if the alleged error deprived Petitioner of "fundamental fairness in the trial process." *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). As articulated above, the Court concludes that Petitioner's conviction for second degree murder was supported by constitutionally sufficient evidence. Accordingly, the Court finds that this alleged error of state law did not deprive Petitioner of "fundamental fairness in the trial process" or any other constitutional right. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Rabon's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 27, 2007

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge